## A00A1331. SCREWS v. THE STATE.
### (538 SE2d 547)

PHIPPS, Judge.

Jeffery Screws was convicted of robbery by intimidation and possession of cocaine. After denial of his motion for new trial, Screws appeals to this court, contending that his confession was involuntary and, therefore, improperly admitted into evidence at his bench trial. We conclude that Screws's confession was voluntary and properly admitted. Thus, we affirm his conviction.

On May 15, 1998, at about 4:45 a.m., Screws entered Herndon's Super C supermarket in Columbus, approached the store clerk and told him that he had been directed by someone else to rob the store. Screws suggested that he was armed and showed the clerk a bulge in his shirt, which he had created by placing a stick underneath. Believing that the bulge was a gun, the clerk took money from the cash register and attempted to give it to Screws. Screws said he did not want all the money — only some of it. He took approximately $80 and fled.

Approximately one and one-half hours after the robbery, Columbus Police Sergeant Joel McNeal found a shirtless and shoeless Screws hiding behind a garbage can in a park. McNeal took Screws back to Herndon's Super C, where the clerk identified him as the robber.

Afterward, Screws was taken to the police station. At approximately 7:10 a.m., he gave a confession to another officer, Detective Frank Massa. He also identified and signed the shirt he had worn during the robbery, which was found in the vicinity of the store.

1. Screws contends that his confession was improperly admitted at trial because at the time of the confession he had been using crack cocaine and was incoherent. At a *Jackson-Denno* hearing held during the trial, Screws testified that on the day of the robbery he had smoked cocaine for "four hours straight" and that he had smoked more cocaine minutes before McNeal found him in the park. He further testified that he told McNeal that he did not "want to go to the police department right now" and that he needed to "get [his] head clear before anything [went] down."

McNeal testified at the *Jackson-Denno* hearing that Screws did exhibit signs of drug usage — "palmy hands" and eyes that were

dilated and white around the pupils. Massa also testified that Screws "appeared to be either a little drunk or a little high."

However, intoxication, standing alone, does not render a statement inadmissible.[1] If the evidence is sufficient to establish that the defendant's statement was the product of rational intellect and free will, it may be admitted even if the defendant was intoxicated when he made the statement.[2]

The burden is on the prosecution to show the voluntariness of a custodial statement by a preponderance of the evidence.[3] Voluntariness is determined based upon the totality of the circumstances.[4] Factual and credibility determinations made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous.[5]

Although Massa testified that Screws "appeared to be a little drunk or a little high," he also testified that "[Screws] knew exactly what was going on." Before taking a statement from Screws, he read him his *Miranda* rights. Massa's general practice was to hand the form to the defendant then and allow him to read it for himself. Screws had completed 11 years in school and had obtained a GED. Screws signed the waiver of rights form and gave a narrative confession which was supplemented through questioning from Massa. Massa testified that he never had reason to think that Screws did not understand his rights, that he never coerced Screws into making a statement, that he did not threaten Screws with repercussion if he did not make a statement and that he did not promise Screws anything in exchange for not requesting an attorney.

The evidence supports the trial court's finding that Screws's statement was voluntary.

2. Screws further contends that in stating, at the time he was found and taken into custody, that he needed to "get his head clear," he expressed an unwillingness to talk to the police. There was no attempt to question him at this time. Nevertheless, he maintains that because the police did not respect this wish, by a later attempt to question him, his Fifth Amendment rights were violated and his confession is therefore inadmissible.

During a police interrogation, if the suspect indicates "in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."[6] We pretermit a deter-

---

[1] *Mickens v. State*, 177 Ga. App. 838-839 (341 SE2d 316) (1986).
[2] *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980).
[3] *Kunis v. State*, 238 Ga. App. 323 (1) (518 SE2d 725) (1999).
[4] *Atwater v. State*, 233 Ga. App. 339, 343 (4) (503 SE2d 919) (1998).
[5] *Kunis*, supra, 238 Ga. App. at 323-324.
[6] (Emphasis omitted.) *Hatcher v. State*, 259 Ga. 274, 276 (2) (379 SE2d 775) (1989), quoting *Miranda v. Arizona*, 384 U. S. 436, 473-474 (86 SC 1602, 16 LE2d 694) (1966).

mination of whether Screws equivocally or unequivocally invoked his right to remain silent. Even if his statement did invoke this right, " '[t]he right to [remain silent] is not protected by a per se rule of "permanent immunity" against further police-initiated interrogation.' [Cits.]"[7] "Police may legitimately inquire whether a suspect has changed his mind about speaking to them with or without an attorney. [Cit.]"[8]

"The facts in this case indicate '(t)his was not the persistent, repetitive interrogation against which courts have fashioned protection for an accused who might otherwise be coerced into incriminating himself.' [Cit.]"[9] There was never an attempt "to wear down [Screws's] resistance and make him change his mind."[10] At the time Screws indicated that he needed to get his head clear, the police had just apprehended him. They did not make any attempt to question him then. And later, after he had been identified by the store clerk and taken to the police station, only one attempt was made to question him. Then, before he gave his confession, Screws was read his *Miranda* rights. He did not reassert an unreadiness to be questioned. Instead, the record supports the court's determinations that he voluntarily waived his right to remain silent and gave a confession. We find no error on this ground.

Accordingly, we affirm Screws's conviction.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 24, 2000.

*William P. Nash, Jr.,* for appellant.

*J. Gray Conger, District Attorney, Julia F. Slater, Assistant District Attorney,* for appellee.

---

[7] *Larry v. State,* 266 Ga. 284, 286 (2) (a) (466 SE2d 850) (1996), quoting *Michigan v. Mosley,* 423 U. S. 96, 103 (96 SC 321, 46 LE2d 313) (1975).

[8] *Johnson v. State,* 251 Ga. 62, 63 (303 SE2d 7) (1983).

[9] *Spratley v. State,* 169 Ga. App. 922 (1) (315 SE2d 474) (1984), quoting *Johnson v. State,* supra.

[10] *Mosley,* supra, 423 U. S. at 105-106.