A01A1473. WALKER v. THE STATE.
(553 SE2d 634)

PHIPPS, Judge.

A Butts County jury convicted Claudia Walker of voluntary manslaughter in the stabbing death of her boyfriend. After entry of a consent order authorizing an out-of-time appeal, Walker filed this appeal. She contests the sufficiency of evidence, the admission of similar transaction evidence and her incriminating statement, and the denial of her motion to suppress. She also contends that the trial court erred in its instruction to the jury. We find no merit to any of these claims and affirm.

When viewed in the light most favorable to the verdict, the evidence shows that at about 1:00 a.m. Irvin Harris had just arrived at the home of his brother. While unloading his luggage, Harris noticed a car moving rapidly down the common driveway between his brother's home and Walker's. About five minutes later, the victim, 67-year-old Calloway Corley, bleeding from an abdominal stab wound, staggered from Walker's home toward Harris. Harris heard Corley saying, "help me, help me." Then, "right before I got up to him he fell over on the side of the driveway in the weeds." After collapsing, still holding his hand to his chest, Corley repeatedly said, "she stabbed me, she stabbed me in the heart." Harris's sister-in-law called 911, and emergency assistance and law enforcement personnel arrived.

Concerned about other possible victims, Sergeant Robert Smith knocked on Walker's door and heard loud music and a television playing, but no one came to the door. Smith then entered Walker's trailer. During the walk-through, Smith did not find any other victims but noticed drops of blood on the floor and blood spattered on top of a bedspread. The stabbing had apparently occurred in the master bedroom, and a trail of blood led from that room down the hallway and through other rooms to an exit door. No items were seized at the time. Later, after procuring a warrant, Smith executed it accompanied by Deputy Michael York who videotaped the crime scene. This video portrayed a trail of blood on the floor and bloody hand prints on a doorjamb and also showed several large knives left soaking in a basin of water in the kitchen sink. Several items of physical evidence were seized.

Corley sustained massive internal injuries and during surgery received 15 units of blood. The operating surgeon, Thomas J. Hunt, M.D., described the stab wound as piercing through the right chest, a lung, the diaphragm, and the liver and lacerating a major vein to the heart. This extensive damage and trauma eventually led to "multiple organ failure." Dr. Hunt estimated that a sharp knife about eight inches long and an inch and a half wide had inflicted the injuries. In Dr. Hunt's expert medical opinion, the survival rate for this type of injury is "about zero," and Corley's prognosis was "extremely poor" from the start. Dr. Hunt testified that "[h]e was one of the few with this injury that got out of the operating room alive."

Corley died about three weeks after being stabbed, while being transported by an advanced life support unit to another hospital. James Byron Dawson, M.D., the director of the Georgia Crime Lab and medical examiner for the State, performed an autopsy. In Dr. Dawson's expert opinion, "[Corley] died as a result of delayed effects associated with the stab wound."

A fugitive squad apprehended Walker in Gwinnett County, and she was transported back to Butts County. Before making a custodial

statement, Walker was provided *Miranda* warnings. Walker admitting stabbing Corley while she was on top of him "having sex" because "that was the best time." By her account, she had stabbed Corley because he had slapped her around and raped her.

Before trial, the State notified Walker of its intent to introduce evidence of two earlier incidents in which Walker had assaulted other men, Danny Chamlee and Earl Gilbert. At the *Williams v. State*[1] hearing, the prosecutor stated that evidence about these prior incidents would show Walker's course of conduct and bent of mind. During the incident involving Chamlee, Walker had cut him on his side with a knife while he lay in bed. Although the trial court refused to permit testimony pertaining to the Gilbert shooting incident, it decided to allow evidence about the Chamlee stabbing incident.

During the trial, the court provided precautionary instructions before Chamlee took the witness stand. Chamlee testified that he and Walker had dated for about five or six years. One night, after an argument, he locked Walker out of his house. Later that night while he lay in bed, Walker suddenly attacked him with a knife and tried to stab him. According to Chamlee, he had been asleep but awakened when Walker unexpectedly appeared in the doorway. Chamlee managed to deflect the knife blade to avert serious injury. Chamlee testified that he was unarmed and Walker was angry at being locked out. Chamlee also described a second incident when Walker had suddenly pulled a gun and tried to shoot him.

1. Walker contends that the evidence was not sufficient as a matter of law to support a guilty verdict because the State did not prove that the stabbing caused Corley's death since Corley died from "apparent cardiac arrest" and had otherwise been in poor health.

The test for determining causation in homicide cases is:

> Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.[2]

Applying that test here, Dr. Hunt testified that Corley's injuries were so extensive that his prognosis was "extremely poor." While Corley

---

[1] 261 Ga. 640 (409 SE2d 649) (1991).
[2] *James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983).

did manage to recover somewhat from those injuries, Dr. Dawson testified that Corley's sudden death was attributable to the delayed effects of the stabbing. Since the testimony of a single witness is generally sufficient to establish a fact,[3] this medical evidence was plainly adequate to authorize the jury to conclude that Corley died as the result of homicide.[4]

2. Walker mistakenly contends that the trial court erred in admitting the similar transaction evidence without having required sworn testimony and cross-examination at the pre-trial hearing. On the contrary, during a similar transaction hearing, there is no per se right to an evidentiary hearing or any mandatory obligation on the part of the State to produce testimonial evidence.[5]

3. Walker asserts that the trial court erred in finding her confession was free and voluntary within the meaning of *Jackson v. Denno.*[6]

The voluntariness of a custodial statement must be proven by the State by a preponderance of the evidence.[7] Unless clearly erroneous, factual and credibility determinations made by the trial court must be affirmed.[8] Here, at the *Jackson-Denno* hearing, the State presented evidence that after freely signing a waiver of rights form, Walker agreed to answer questions from Captain Michael Overbey, the chief investigator on the case. Overbey denied making any promises or threats. Walker responded to various questions and implicated herself in stabbing Corley. But when the inquiry sought to explore whether Chamlee had raped her before she shot at him, Walker abruptly invoked her right to counsel. The trial court verified that Walker had not exhibited signs of physical injuries or symptoms of physical or mental impairment at the time of her incriminating remarks. Walker never repudiated her statement. The trial court's determination is supported by evidence and is not clearly erroneous.[9]

4. Walker contends that the trial court erred in denying her motion to suppress the evidence obtained during a search of her home. But, because Walker failed to offer support for this purported error by citation of authority or argument, it is deemed waived under Court of Appeals Rule 27 (c) (2).

5. Walker contends that the trial court incompletely charged the jury on the defense of justification. She claims that this area of law underwent a fundamental change with judicial recognition of the "battered person syndrome" defense.

---

[3] OCGA § 24-4-8; *Hagood v. State*, 228 Ga. App. 693, 694 (2) (492 SE2d 606) (1997).

[4] See *Adams v. State*, 203 Ga. App. 794, 795 (1) (418 SE2d 68) (1992).

[5] *Talmadge v. State*, 236 Ga. App. 454, 457-458 (1) (e) (512 SE2d 329) (1999).

[6] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[7] *Screws v. State*, 245 Ga. App. 664, 665 (1) (538 SE2d 547) (2000).

[8] Id.

[9] See *Kunis v. State*, 238 Ga. App. 323, 324 (1) (518 SE2d 725) (1999).

The battered person syndrome describes a series of common characteristics that appear in individuals who are abused physically and psychologically for an extended period of time by a dominant and controlling figure in their lives.[10] "[T]he psychological abuse inflicted on the accused must have been of such an extreme nature that it engendered in the accused a 'reasonable belief in the imminence of the victim's use of unlawful force.' [Cit.]"[11] In *Smith v. State*,[12] the Supreme Court of Georgia held that in battered person syndrome cases, a modified jury instruction on justification should be given when authorized by the evidence and requested by the defendant. But here, Walker did not testify, offered no evidence on her own behalf, and never requested such a charge. Therefore, no error has been shown.

6. Walker asserts that the trial court erred by giving a burden-shifting and repetitive charge to the jury on the crimes of voluntary manslaughter and aggravated assault. The record belies these claims. The trial court properly charged on these offenses, including a charge on the State's burden when the defense of justification is raised. After commencing deliberations, the jury requested a "better definition of aggravated assault versus manslaughter." After the jury was recharged on those two offenses, defense counsel objected because part of the recharge had used the pronoun "she" and by the defense theory, the decedent had committed an aggravated assault on Walker.

Walker, not the decedent, was the one being tried under indictments for murder and felony murder, so the jury instructions necessarily and properly pertained to Walker. Having read and considered the charge as a whole, we find no error.[13]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED AUGUST 7, 2001 —
RECONSIDERATION DISMISSED SEPTEMBER 7, 2001.

*William A. Fears*, for appellant.
Claudia Walker, *pro se*.
*Richard G. Milam, District Attorney*, for appellee.

---

[10] *Mobley v. State*, 269 Ga. 738, 739 (505 SE2d 722) (1998).
[11] *Nguyen v. State*, 271 Ga. 475 (1) (520 SE2d 907) (1999).
[12] 268 Ga. 196, 200 (486 SE2d 819) (1997).
[13] See *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982).