S10A0070. THE STATE v. JACKSON et al.
(697 SE2d 757)

NAHMIAS, Justice.

Appellees, defendants Carlester Jackson and Warren Woodley Smith, allegedly conspired with Jerold Daniels to rob a drug dealer at gunpoint. The victim, however, also turned out to be armed, and he shot and killed Daniels in self-defense. A Cobb County grand jury

indicted Jackson and Smith on three counts of felony murder along with other offenses. The defendants moved to dismiss the felony murder counts pursuant to *State v. Crane*, 247 Ga. 779 (279 SE2d 695) (1981). The trial court granted the motion to dismiss, and the State now appeals, asking us to overrule *Crane*. After thorough review, we conclude that *Crane* should be overruled, and we therefore reverse. The causation issue presented should be decided by a properly instructed jury at trial, using the customary proximate cause standard.

This should be an easy case for a Georgia appellate court. The question presented is what the term "causes" means as used in the felony murder statute. See OCGA § 16-5-1 (c) ("A person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice."). In cases both before and after *Crane*, this Court interpreted that very term to require "proximate causation." In addition, there are dozens of other cases from this Court and the Court of Appeals, before and after *Crane*, that hold that the same term as used in other homicide statutes and in many other criminal and civil contexts means proximate cause.

This case is difficult only because of *Crane*. There, in a short opinion that did not mention any of Georgia's extensive causation case law, the Court held that the word "causes" in the felony murder statute requires not proximate causation, but that the death be "caused directly" by one of the parties to the underlying felony. Id. at 779. Applying this new and more restrictive conception of causation, the Court concluded that a defendant cannot be found guilty of felony murder when the intended victim of the underlying felony kills the defendant's accomplice, because that death is "caused directly" by the victim rather than the defendant. See id.

As shown below, the opinion in *Crane* was poorly reasoned, and perhaps because it is so incongruous with the rest of Georgia law, it has not been consistently applied by this Court or the Court of Appeals in the ensuing three decades. Its holding has not been applied uniformly in the specific context of felony murder, nor has its reasoning been followed in construing the same causation language in other homicide statutes. The relevant facts of this case, however, are almost identical to *Crane*'s, and so today we must either reaffirm *Crane* or reject it. After careful consideration, we have concluded that *Crane* must be overruled. Stare decisis is an important doctrine, but it is not a straightjacket. *Crane*'s age and statutory nature are outweighed by the other factors undermining its precedential authority, and it is important that the Court refute its reasoning to ensure that the case can no longer be cited in efforts to pollute other streams of our law.

## The Factual and Procedural Background of This Case

1. The parties stipulated, for purposes of the motion to dismiss, that Jackson, Smith, and Daniels conspired to commit an armed robbery of someone who the defendants believed was a drug dealer. Daniels approached the intended victim armed with a handgun, with Jackson nearby and Smith waiting in the getaway vehicle. The victim, who was also armed, exchanged gunfire with Daniels, and he ultimately shot and killed Daniels in self-defense. Jackson and Smith were later arrested. The indictment charged the defendants with, among others offenses, felony murder. Tracking the statutory language, Count 1 alleged that both Jackson and Smith "did cause the death of Jerold Daniels, a human being, . . . while in the commission of a felony, to wit: Aggravated Assault." The indictment charged Smith with two more counts, alleging that he caused Daniels's death while in the commission of the felony of possession of a firearm by a convicted felon.

The defendants moved to dismiss the felony murder charges. They argued that because the victim fired the shot that killed their co-conspirator, they did not directly cause Daniels's death. The trial court, bound by this Court's decision in *Crane*, granted the motion to dismiss. The State filed this direct appeal under OCGA § 5-7-1 (a) (1), asking us to overrule *Crane*.

## "Cause" in Georgia's Homicide Statutes Means Proximate Cause

2. The felony murder statute provides that "[a] person also commits the offense of murder when, in the commission of a felony, *he causes* the death of another human being irrespective of malice." OCGA § 16-5-1 (c) (emphasis supplied). As in *Crane*, the question in this case is whether a defendant who commits a felony whose intended victim kills a co-conspirator "causes" that death. The answer should be straightforward. Georgia is a proximate cause state. When another meaning is not indicated by specific definition or context, the term "cause" is customarily interpreted in almost all legal contexts to mean "proximate cause" — "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred." Black's Law Dictionary 1103 (5th ed. 1979).

Thus, this Court has explained that proximate cause is the standard for **criminal cases in general**. See, e.g., *Skaggs v. State*, 278 Ga. 19, 19-20 (596 SE2d 159) (2004) (In a criminal case, proximate cause exists when the accused's " 'act or omission played a substantial part in bringing about or actually causing the (victim's) injury or damage and . . . the injury or damage was either a direct

result or a reasonably probable consequence of the act or omission.' "" (citations omitted)). We have also said that proximate cause is the standard for **homicide cases in general**. See, e.g., *James v. State*, 250 Ga. 655, 655 (300 SE2d 492) (1983) ("In *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940), we set out the following test for determining causation in homicide cases: 'Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.' ").

Consistent with this general rule, we have held in many cases and for many decades that proximate causation is the standard for **murder cases** prosecuted under the murder statute, now codified as OCGA § 16-5-1. Thus, we have long held, in numerous cases, that proximate causation is the test for **malice murder**, a crime defined using the identical "he . . . causes" phrasing. See OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.").[1] Finally, with respect to the statutory text at issue in this case, and in full accord with the general rule for criminal and homicide cases and with our construction of the identical language in subsection (a) of the same statute, we have repeatedly held, before and after *Crane*, that the phrase "he causes" in OCGA § 16-5-1 (c) establishes proximate causation as the standard for liability in **felony murder cases**.[2]

---

[1] See, e.g., *Wilson*, 190 Ga. at 829 (upholding proximate cause instruction and malice murder conviction where the defendant smashed the victim's skull with a hatchet and the victim died nine months later from infection and gangrenous lung abscess); *Ward v. State*, 238 Ga. 367, 369 (233 SE2d 175) (1977) (holding that, even if the defendant's act of throwing the drunken victim off a bridge into a river "did not directly cause" the victim's death, "the jury was authorized to find that this act either materially contributed to the death . . . or materially accelerated it" under the proximate cause test set forth in *Wilson* and other cases); *Fleming v. State*, 240 Ga. 142, 145 (240 SE2d 37) (1977) (affirming the trial court's refusal to instruct the jury to acquit on malice murder if it found that the defendant mortally shot the victim but also found that the "immediate cause" of the victim's death was drowning, because "[t]he evidence established that the wounds were the proximate cause of the death"); *Bishop v. State*, 257 Ga. 136, 140 (356 SE2d 503) (1987) (holding in a malice murder case that " '[w]here one inflicts an unlawful injury, such injury is the proximate cause of death if the injury "directly and materially contributed to the happening of a subsequent accruing immediate cause of the death," ' " noting that "[t]his court has held evidence of death by pulmonary embolism resulting from treatment after wounds were inflicted by a defendant can present a question for a jury as to whether the wound was the proximate cause of death." (citations omitted)).

[2] See, e.g., *Jones v. State*, 220 Ga. 899, 902 (142 SE2d 801) (1965) (" 'A murder may be committed in perpetration of a felony, although it does not take place until after the felony itself has been technically completed, if the homicide is committed within the res gestae of the

Indeed, in virtually all of Georgia's many homicide and feticide statutes, including the frequently charged voluntary and involuntary manslaughter and vehicular homicide statutes, the General Assembly has employed the same or very similar causation phrasing.[3] And

---

felony.' Certainly the killing is a part of the res gestae of the robbery in this case . . . and is one of the incidental, probable consequences of the execution of the design to commit the robbery." (citations omitted)); *Dupree v. State*, 247 Ga. 470, 470-471, 472 (277 SE2d 18) (1981) (holding, where the victim died of heart failure brought on by stress and injuries incurred during a robbery, that the evidence was sufficient to find that "the conduct of the appellant in perpetrating the robbery constituted the proximate cause of the death of the deceased"); *Larkin v. State*, 247 Ga. 586, 587 (278 SE2d 365) (1981) (upholding felony murder conviction against the defendant's claim that the evidence was insufficient to show that "he caused his mother-in-law's death" when he stabbed her while assaulting his wife and she later died from a pulmonary embolus as a complication of surgery to re-stitch the knife wound, explaining that "[w]here one inflicts an unlawful injury, such injury is the proximate cause of death if the injury 'directly and materially contributed to the happening of a subsequent accruing immediate cause of the death' " (citation omitted)); *Durden v. State*, 250 Ga. 325, 329 (297 SE2d 237) (1982) (affirming felony murder conviction where a store owner responding to a burglary died of a heart attack after exchanging shots with the defendant, explaining that "the rule may be stated as follows: Where one commits a felony upon another, such felony is to be accounted as the efficient, proximate cause of the death whenever it shall be made to appear either that the felony directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or that the injury materially accelerated the death, although proximately occasioned by a pre-existing cause."); *Williams v. State*, 255 Ga. 21, 22 (334 SE2d 691) (1985) (relying on *Durden* to uphold felony murder conviction where the defendant shot the victim in the leg, causing him to fall out of his vehicle, which then rolled over and killed him, because the aggravated assault "directly and materially contributed to his death by asphyxiation"); *State v. Cross*, 260 Ga. 845, 847 (401 SE2d 510) (1991) (holding that "OCGA § 16-5-1 (c), defining felony murder, requires that the death need only be *caused* by an injury which occurred during the res gestae of the felony" and upholding an indictment that charged the death of a baby more than a year after the defendant shook her (emphasis in original)); *Skaggs*, 278 Ga. at 19-20, 22 (applying the general test for proximate causation in a felony murder case and holding that the defendant's aggravated assault by hitting and kicking the victim proximately caused the victim's death by causing him to fall and fatally hit his head on the ground, rejecting the argument based upon *Crane* that the proximate cause jury instruction erroneously "failed to include additional language expounding upon proximate cause when the accused does 'not directly cause the death' ").

[3] See, all with emphasis supplied, OCGA § 6-2-5.2 ("*Any person who*, without malice aforethought, *causes the death of another person* through the violation of Code Section 6-2-5.1 [operating aircraft under the influence] commits the offense of homicide by aircraft. . . ."); § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when *he causes the death of another human being* under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion . . . ."); § 16-5-3 (a) ("A person commits the [felony] offense of involuntary manslaughter in the commission of an unlawful act when *he causes the death of another human being* without any intention to do so by the commission of an unlawful act other than a felony."), (b) ("A person commits the [misdemeanor] offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when *he causes the death of another human being* without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm."); § 16-5-80 (b) ("A person commits the offense of feticide if *he or she* willfully and without legal justification *causes the death of an unborn child* by any injury to the mother of such child. . . ."), (d) ("A person commits the offense of voluntary manslaughter of an unborn child when *such person causes the death of an unborn child* under circumstances which would otherwise be feticide and if such person acts solely as the result of a sudden, violent, and irresistible passion . . . ."); § 40-6-393 (a) ("*Any person who*, without malice aforethought, *causes the death of another person* through the violation of [various motor vehicle statutes]

to the extent those statutes have been interpreted by Georgia's appellate courts, once again the term "cause" has been regularly construed as requiring proximate causation.[4]

---

commits the offense of homicide by vehicle in the first degree . . . ."), (b) (*"Any driver of a motor vehicle who*, without malice aforethought, *causes an accident which causes the death of another person* and leaves the scene of the accident in violation of subsection (b) of Code Section 40-6-270 commits the offense of homicide by vehicle in the first degree . . . ."), (c) (*"Any person who causes the death of another person*, without an intention to do so, by violating any [other] provision of this title . . . commits the offense of homicide by vehicle in the second degree *when such violation is the cause of said death* . . . ."); § 40-6-393.1 (b) (1) ("A person commits the offense of feticide by vehicle in the first degree if *he or she causes the death of an unborn child* by any injury to the mother of such child which would be homicide by vehicle in the first degree . . . ."), (c) (1) ("A person commits the offense of feticide by vehicle in the second degree if *he or she causes the death of an unborn child* by any injury to the mother of such child by violating any [other] provision of this title . . . which would be homicide by vehicle in the second degree . . . ."); § 40-6-396 (a) (*"Any person who*, without malice aforethought, *causes the death of another person* through the violation of subsection (a) of Code Section 40-6-26 commits the offense of homicide by interference with an official traffic-control device or railroad sign or signal . . . ."); § 52-7-12.2 (a) (*"Any person who*, without malice afore-thought, *causes the death of another person* through the violation of [various code sections] commits the offense of homicide by vessel in the first degree."), (b) (*"Any operator of a vessel who*, without malice aforethought, *causes a collision or accident which causes the death of another person* and leaves the scene of the collision or accident in violation of subsection (a) of Code Section 52-7-14 commits the offense of homicide by vessel in the first degree. . . ."), (c) (*"Any person who causes the death of another person*, without an intention to do so, by violating any [other] provision of this title . . . commits the [misdemeanor] offense of homicide by vessel in the second degree *when such violation is the cause of said death*."); § 52-7-12.3 (b) (1) ("A person commits the offense of feticide by vessel in the first degree if *he or she causes the death of an unborn child* by any injury to the mother of such child through the violation of [various code sections] . . . ."), (c) (1) ("A person commits the offense of feticide by vessel in the second degree if *he or she causes the death of an unborn child* by any injury to the mother of such child by violating any [other] provision of this title . . . .").

[4] See, e.g., *Cain v. State*, 55 Ga. App. 376, 381-382 (190 SE 371) (1937) ("In a case of manslaughter, the negligence of the defendant must be the proximate cause of the death, in order to constitute such crime. . . . 'Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrong-doer, or was in reality only a condition on or through which the negligent act operated to induce the injurious result.' " (citations omitted)); *Coley v. State*, 117 Ga. App. 149, 151 (159 SE2d 452) (1968) ("To convict for the offense of involuntary manslaughter in the commission of an unlawful act, it is necessary, among other things, that the death be the proximate result of the unlawful act. Or, as it may otherwise be stated, the unlawful act must be found by the jury to be the proximate cause of the homicide." (citations omitted)); *Cook v. State*, 134 Ga. App. 357, 359 (214 SE2d 423) (1975) (approving detailed proximate cause instruction on murder, voluntary manslaughter, and involuntary manslaughter charges); *Johnson v. State*, 170 Ga. App. 433, 434 (317 SE2d 213) (1984) ("The term and concept of proximate cause has been applied in vehicular homicide cases in this state for many years."); *Hickman v. State*, 186 Ga. App. 118, 119 (366 SE2d 426) (1988) (rejecting claim in voluntary manslaughter case that the victim did not die "as a direct, proximate result of the strike or strikes inflicted by defendant because the cause of death was due to an intervening factor: pulmonary embolism," citing *Heath v. State*, 77 Ga. App. 127, 130-131 (47 SE2d 906) (1948)); *Anderson v. State*, 226 Ga. 35, 37 (172 SE2d 424) (1970) (approving charge on involuntary manslaughter in the commission of an unlawful act, explaining that the "excerpt complained of when considered with the entire charge plainly instructed the jury that the act of the defendant must have been the proximate cause of the death of the deceased"); *Miller v. State*, 236 Ga. App. 825, 828 (513 SE2d 27) (1999) ("In vehicular homicide cases, the State

As an original matter, therefore, we would decide this case simply by applying the customary legal meaning of "cause," which is supported by the ample precedent interpreting the felony murder provision at issue, its identical sister provision in the murder statute, and identical or substantially similar provisions in many other homicide statutes. We would hold that the phrase "he causes" as used in OCGA § 16-5-1 (c) requires the State to prove that the defendant's conduct in the commission of the underlying felony *proximately caused* the death of another person. In the context of this case, proximate causation would exist if (to use "the rule" for felony murder that the Court stated a year after deciding *Crane*) the felony the defendants committed "directly and materially contributed to the happening of a subsequent accruing immediate cause of the death," *Durden*, 250 Ga. at 329, or if (to use language from a case decided 16 years before *Crane*) " 'the homicide [was] committed within the res gestae of the felony' . . . and is one of the incidental, probable consequences of the execution of the design to commit the robbery," *Jones*, 220 Ga. at 902 (citations omitted).

Whether the evidence in this case would establish such proximate causation beyond a reasonable doubt is a harder question, in part because the stipulated facts we have before us are summary and the issue of proximate causation is so fact-intensive. That is why proximate cause determinations are generally left to the jury at trial. See *McGrath*, 277 Ga. App. at 829 ("What constitutes proximate cause is 'undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.' " (citation omitted)).

The defendants here planned an armed robbery of someone they believed to be a drug dealer, who also turned out to be armed, an occurrence not unusual among drug dealers. When their co-conspirator Daniels approached the victim with a handgun to execute the robbery, the victim defended himself and killed Daniels. Perhaps more detailed evidence would show that, despite the dan-

---

must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." (citations omitted)); *Walker v. State*, 251 Ga. App. 479, 481 (553 SE2d 634) (2001) (upholding voluntary manslaughter conviction, stating that "[t]he test for determining causation in homicide cases is" whether the unlawful injury is " 'the efficient, proximate cause of death' " (citation omitted)); *Pitts v. State*, 253 Ga. App. 373, 374 (559 SE2d 106) (2002) ("In order to be convicted of vehicular homicide under OCGA § 40-6-393, the conduct of the defendant must have caused the death. This requires showing that 'the defendant's conduct was the "legal" or "proximate" cause, as well as the cause in fact, of the death.' " (citations omitted)); *McGrath v. State*, 277 Ga. App. 825, 828-829 (627 SE2d 866) (2006) ("[I]n order to be convicted of vehicular homicide by recklessly driving in violation of OCGA § 40-6-390, [the defendant's] conduct must have caused the death of [the victim] . . . . 'This requires showing that "the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." ' " (citations omitted)).

gerous and violent nature of armed robbery and drug dealing, circumstances existed that made the fatal result of the defendants' felonious conduct improbable in this case, or made the drug dealer victim's actions an "efficient intervening cause." On the limited record before us, however, a jury could rationally conclude that the defendants' felonies played a "substantial part in bringing about" their accomplice's death when they confronted at gunpoint a drug dealer, whose deadly response could be viewed as a "reasonably probable consequence" of their acts. *Skaggs*, 278 Ga. at 19-20 (citations and punctuation omitted). Thus, as an original matter, we would have little hesitation reversing the trial court's order and remanding the case for trial and decision by a jury properly charged on causation using language adapted from our proximate cause homicide cases.

### State v. Crane

3. This is not, however, an original matter. The same legal issue was presented, in much the same factual scenario, nearly 30 years ago in *Crane*. In that case, Crane and three confederates were burglarizing a home when the homeowner shot and killed one of them in defense of himself and his property. See 247 Ga. at 779. The Court recognized that the case turned on whether the term "he causes," as used in the felony murder statute, can extend to the death of an accomplice killed by the intended victim. Id. In its one-and-a-half page opinion, however, the *Crane* Court did not consider the customary legal meaning of "cause" or look to our then-existing case law interpreting that term as used in the felony murder statute, the malice murder statute, and homicide and other criminal statutes in general. Instead, the Court baldly asserted that it was faced with the choice between limiting felony murder to deaths "caused *directly* by one of the parties to the underlying felony" or construing the statute "to include also those deaths *indirectly* caused by one of the parties." Id. (footnote omitted; emphasis supplied). Reflecting on the only two interpretations of "he causes" that it considered, the Court stated that "[w]e would, if allowed a choice, favor the construction which would criminalize the conduct involved in the present case." Id. at 780. Because a criminal statute was being interpreted, however, the Court concluded that "we are constrained by principle to rule in behalf of the accuseds." Id.

We agree that the rule of lenity would require the Court to adopt the interpretation that favored the accuseds if, after applying all other tools of statutory construction, the Court determined that "directly causes" and "indirectly causes" were the only possible

meanings of the word "causes" in OCGA § 16-5-1 (c) and that equally strong reasoning supported either interpretation, leaving the statute ambiguous. See *Banta v. State*, 281 Ga. 615, 617-618 (642 SE2d 51) (2007) (" 'The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.' " (quoting *United States v. Shabani*, 513 U. S. 10, 17 (115 SC 382, 130 LE2d 225) (1994)). But the *Crane* Court did *not* apply the traditional canons of statutory construction before jumping to that conclusion, and the binary reading of the causation element proposed by the *Crane* Court finds no foundation in our legal tradition or our case law, none of which the Court mentioned.[5] Indeed, other than *Crane* and cases discussing *Crane*, we have found not a single instance in our extensive causation case law where the Court has suggested that the word "causes" can mean only "directly causes" or "indirectly causes."

To the contrary, we have consistently employed the more nuanced concept of proximate causation, which does not track the binary, and often unhelpful, direct-indirect dichotomy of *Crane*. Proximate causation imposes liability for the reasonably foreseeable results of criminal (or, in the civil context, tortious) conduct if there is no sufficient, independent, and unforeseen intervening cause. That definition would include, at least in some factual scenarios, a deadly response against one of the perpetrators by the intended victim of a dangerous felony like burglary or armed robbery.

## The Inconsistent Application of Crane's Holding

4. No later cases have bolstered *Crane*'s reasoning, nor do the dissents today make any effort to do so. Indeed, neither this Court nor the Court of Appeals has consistently applied *Crane*'s holding that the words "he causes" in the felony murder statute "require the death to be caused directly by one of the parties to the underlying felony." 247 Ga. at 779 (footnote omitted). In nearly three decades, the Court has applied *Crane* wholeheartedly on just two occasions.

---

[5] The only other support the *Crane* Court offered for its holding was that "[o]ther jurisdictions apparently are split on this issue, the numerical majority favoring a negative answer," citing an ALR annotation without any analysis of whether the felony murder statutes and case law in those jurisdictions mirror Georgia's. See *Crane*, 247 Ga. at 779 & n. 3 (citing 56 ALR3d 239). The *Crane* Court's perfunctory analysis of the felony murder statute to reach a holding that limits the scope of felony murder liability is not unique. See *Ford v. State*, 262 Ga. 602, 602 (423 SE2d 255) (1992) (holding, based largely on case law from other states, and despite the felony murder statute's use of the unrestricted term "a felony," that "dangerousness is a prerequisite to the inclusion of a felony as an underlying felony under the felony murder statute of this state"). See also *Shivers v. State*, 286 Ga. 422, 425-428 & n. 3 (688 SE2d 622) (2010) (Nahmias, J., concurring specially) (criticizing the *Ford* Court's holding and reasoning, including its misstatement about the common law history of Georgia's felony murder statute).

The first came a year after *Crane*, when the Court reversed a felony murder conviction where a police officer killed a bystander during a shootout with the defendant. See *Hill v. State*, 250 Ga. 277, 278-280 (295 SE2d 518) (1982).[6] The second time was in *Hyman v. State*, 272 Ga. 492 (531 SE2d 708) (2000). Police came to Hyman's home looking for a murder suspect, and he falsely told them that the suspect was not there. When the police were allowed to search the house, the suspect shot and killed one of the officers. See id. at 493. Hyman was charged with murder while in the commission of the felony of making a false statement, but the Court held that the "direct cause" of the officer's death was the suspect, with whom Hyman was not acting in concert, and so under *Crane* his felony murder conviction was reversed. See 272 Ga. at 493. It is possible that the same result would have been reached under the proximate cause test, consideration of which the *Hyman* Court pretermitted. See id.

In another case, however, the Court upheld the defendant's felony murder conviction based upon the death of a bystander killed by someone who was engaging in a gunfight with the defendant. See

---

[6] It may be noted that this holding had no immediate effect on the case, because the defendant killed the police officer during the shootout, and his malice murder conviction and death sentence for that crime were affirmed. See *Hill*, 250 Ga. at 279, 281, 284, 287. However, the Eleventh Circuit later vacated the capital conviction based upon violations of Hill's due process rights at trial. See *Hill v. Turpin*, 135 F3d 1411, 1412 (11th Cir. 1998).

Looking to a footnote in *Hill*, see 250 Ga. at 280, n. 3, Chief Justice Hunstein's dissent argues that "the holding in *Crane* is compelled by the plain and unambiguous language in OCGA § 16-2-20, the statute that identifies those persons who may be charged with and convicted of the commission of a crime." Dissenting Op. at 661. The *Crane* Court did not suggest that its holding was compelled by OCGA § 16-2-20, mentioning the predecessor version of that statute only in passing, see 247 Ga. at 779, n. 4, and the Chief Justice does not try to defend the causation reasoning on which *Crane* did rely. Moreover, in its footnote, the *Hill* majority was not explaining why felony murder liability was limited by OCGA § 16-2-20. The Court instead had accepted *Crane*'s limitation of liability to deaths "directly cause[d]" by the defendant and was looking to the party-to-a-crime statute to see if it might be used to expand liability to "a crime one did not directly commit." 250 Ga. at 280 & n. 3. On the incorrect "direct causation" assumption, the answer was no. The Chief Justice cites no authority for the proposition that the party-to-a-crime statute imposes a *limitation* on proximate causation. To the contrary, OCGA § 16-2-20 *expands* criminal liability from a defendant's own criminal acts (and their proximate consequences) to the criminal acts of his accomplices and agents (and their proximate consequences). Thus, the question in this case is not whether the defendants intentionally caused their *victim* to commit a crime by killing their co-conspirator; the victim acted in self-defense and committed no crime. The question is whether a jury could reasonably find that the predicate felonies the *defendants* intentionally committed, alone or as co-parties under OCGA § 16-2-20 (b) (3) and (4), proximately caused Daniels' death when their intended victim defended himself against the armed robbery. Our traditional proximate cause law answers that question affirmatively. Finally, we note that the effort to limit felony murder liability based on OCGA § 16-2-20 runs into the same problem as the effort to limit liability based on a constricted view of causation: the same reasoning should apply to all similar criminal and homicide cases, but that has never been done, as the discussion below demonstrates. In short, this opinion does nothing to alter or expand OCGA § 16-2-20. We are simply interpreting the language of the felony murder statute.

*Smith v. State*, 267 Ga. 372, 375-376 (477 SE2d 827) (1996). To reach that result, the Court had to redefine the *Crane* test as whether the death of the bystander was "directly caused" by "a willing participant" (rather than a co-party) in the gunfight. 267 Ga. at 375. The Court struggled to distinguish *Crane* and *Hill* as cases in which "the homicides were not committed by either the defendant or someone acting in concert with him." 267 Ga. at 376. The shooter in *Smith*, however, was plainly "one of the parties to the [defendant's] underlying felony," *Crane*, 247 Ga. at 779 (footnote omitted), and it is questionable whether someone charged with committing an aggravated assault *against* the defendant by shooting at him, see *Smith*, 267 Ga. at 372, n. 1, can really be said to be "acting in concert with him," id. at 376.

In other cases since *Crane*, we have upheld felony murder convictions where the death could hardly be said to have been "caused directly" by the defendant's acts. See *McCoy v. State*, 262 Ga. 699, 700 (425 SE2d 646) (1993) (upholding felony murder conviction by finding that the death of a firefighter who fell into a well behind a burning house and died of asphyxiation was "directly attributable" to the defendant's felonious conduct in setting fire to the house); *Durden*, 250 Ga. at 329 (affirming felony murder conviction where a storeowner responding to a burglary died of a heart attack after exchanging shots with the defendant). In several other felony murder cases, we have simply ignored *Crane* and applied the proximate cause test. See, e.g., the post-1981 cases cited in footnote 2 above.

Moreover, if *Crane*'s reasoning is solid and its holding deserving of precedential value, as Justice Thompson's dissent suggests, see Dissenting Op. at 663, then the term "causes" and the identical or substantially similar causation language used in Georgia's other homicide statutes should also be susceptible to the same "directly causes" versus "indirectly causes" ambiguity posited in *Crane*. And because all those statutes are also penal, the rule of lenity should require that the "directly causes" interpretation be applied in those contexts as well. But that has not happened. To the contrary, this Court and the Court of Appeals have continued to apply the traditional proximate cause standard in those situations. See, e.g., the post-1981 cases cited in footnotes 1 and 4 above.

*Crane* has caused the most tension in vehicular homicide cases, which, like felony murder cases, sometimes involve deaths that are "directly" caused by innocent third parties acting as a result of the defendant's precipitating criminal acts. Thus, in *Hill*, this Court held that, under *Crane*, a defendant did not "cause" the death of another person and so was not guilty of felony murder when a police officer at whom the defendant was shooting shot back and killed an

innocent bystander. See 250 Ga. at 280. Yet the Court of Appeals, in a case involving almost the same causation language and a similar fact pattern, held that a defendant was guilty of vehicular homicide when a police officer from whom he was illegally fleeing bumped his truck in an effort to stop it (much like an officer returning fire to stop an ongoing felony) and caused the truck to crash, killing an innocent bystander (a baby riding in the truck). See *Pitts*, 253 Ga. App. at 374. The *Pitts* court reached this conclusion by simply ignoring *Crane* and applying the usual proximate cause test. See id. at 374-375.

Similarly, in *Ponder v. State*, 274 Ga. App. 93 (616 SE2d 857) (2005), the defendant, who was under the influence and recklessly fleeing the police, caused a pursuing police car to veer into oncoming traffic, where the police car collided with a Buick, killing the officer. See id. at 94-96. Like the homeowner who fired the fatal shot in *Crane*, the "direct cause" of the officer's death was the driver of the Buick. But the Court of Appeals, again without mention of *Crane*, upheld the conviction because the evidence supported the jury's finding that the defendant's criminal conduct was the proximate cause of the officer's death. See 274 Ga. App. at 95-96.

In *McGrath v. State*, 277 Ga. App. 825 (627 SE2d 866) (2006), the chain of causation was even more indirect. McGrath, who was driving recklessly and under the influence on I-85, crashed into a car driven by Kar. Both vehicles were wrecked, and McGrath and Kar were injured. Burroughs-Brown, a nurse, saw the wreck and stopped to assist. Another car driven by Ramirez, who could not see Burroughs-Brown until it was too late due to poor visibility, hit her. She was pinned briefly between Kar's and Ramirez's cars, but then she fell onto the highway, where two other vehicles ran over her. See id. at 826-827. Citing *Crane*, McGrath argued that he did not directly cause Burroughs-Brown's death, and faithful application of *Crane*'s reasoning would indeed have required reversal. But the Court of Appeals again upheld the conviction under the proximate cause test. See *McGrath*, 277 Ga. App. at 828-830. In a footnote, the court distinguished *Crane* on the ground that it "involved the felony murder statute, which was subject to two interpretations" and asserted that "[s]uch is not the case here, since the vehicular homicide statute has been consistently interpreted and applied." Id. at 830, n. 4. The Court of Appeals distinguished *Crane* similarly in an earlier vehicular homicide case. See *Johnson*, 170 Ga. App. at 434 ("*Crane* is clearly inapposite to the instant case where there is no evidence of indirect causation and which involves construction of an entirely different statute.").

Vehicular homicide and felony murder may be defined in "entirely different" statutes, in terms of their Code sections, but the relevant causation language is indistinguishable, compare OCGA §

40-6-393 (a) (*"Any person who*, without malice aforethought, *causes the death of another person* through the violation of [various code sections] commits the offense of homicide by vehicle in the first degree. . . ." (emphasis supplied)), with OCGA § 16-5-1 (c) ("A person also commits the offense of murder when, in the commission of a felony, *he causes the death of another human being* irrespective of malice. . . ." (emphasis supplied)). If *Crane* is good law, then this Court's construction of the causation language in OCGA § 16-5-1 (c) should be binding on the Court of Appeals when it interprets the virtually identical causation language in the vehicular homicide statute. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."). *Crane* is, however, no longer good law.

### Stare Decisis Considerations

5. Stare decisis is an important principle that promotes the rule of law, particularly in the context of statutory interpretation, where our incorrect decisions are more easily corrected by the democratic process. See *Smith v. Salon Baptiste*, 287 Ga. 23, 30 (694 SE2d 83) (2010) (Nahmias, J., concurring specially). However, stare decisis is not an " 'inexorable command,' nor 'a mechanical formula of adherence to the latest decision.' . . . Stare decisis is instead a 'principle of policy.' " *Citizens United v. Fed. Election Commn.*, 558 U. S. ___ (130 SC 876, 920, 175 LE2d 753) (2010) (Roberts, C. J., concurring) (citations omitted). In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question *decided* against the importance of having it *decided right*. Id. In doing so, we consider factors such as the age of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning. See *Montejo v. Louisiana*, 556 U. S. ___ (129 SC 2079, 2088-2089, 173 LE2d 955) (2009).

As demonstrated above, *Crane*'s reasoning is unsound and contrary to the body of our law. *Crane*'s holding may be workable in its specific context — the death of a co-party directly caused by the intended victim of the underlying felony. As just discussed, however, this Court and the Court of Appeals have been unable or unwilling to apply *Crane*'s reasoning to all felony murder cases, much less to the many other homicide statutes that use the same causation language. In addition, *Crane* affects no property or contract issues and establishes no substantive rights, so it creates no meaningful reliance interests. (To be sure, the potential conspiring felon who is well-read in the law might be slightly less deterred from committing a dangerous felony by the belief that if one of his co-conspirators is

killed by the intended victim or a police officer, he will not face a murder charge, but that is not the sort of reliance the law usually recognizes in the stare decisis analysis.)

That leaves, on the side of reaffirming *Crane*, only its age and its statutory nature. That is all Justice Thompson's dissent relies upon. See Dissenting Op. at 663-665. *Crane* is indeed nearly three decades old, and in *Crane* and the only two subsequent cases in which we actually applied its holding, the Court expressly noted that the General Assembly could correct the result. See *Crane*, 247 Ga. at 780 ("The choice of whether or not the conduct in the present case should be violative of our criminal statutes lies with the General Assembly."); *Hyman*, 272 Ga. at 493 ("If this result be viewed as a defect in our felony murder statute, the remedy lies with the legislature." (quoting *Hill*, 250 Ga. at 280)).[7] "Without strong reason to set aside a long-standing interpretation," Justice Thompson's dissent says, "we will not do so in the face of legislative acquiescence." Dissenting Op. at 664. But see *Durrence v. State*, 287 Ga. 213, 216, n. 5 (695 SE2d 227) (2010) (Thompson, J.) (unanimously overruling a 26-year-old statutory interpretation case in a footnote, briefly explaining why the precedent was decided incorrectly but not mentioning "legislative acquiescence").

We have explained at length the strong reasons that exist to overrule *Crane*, which the dissents do not refute. Moreover, *Crane*'s odd reasoning and the inconsistent application of its holding by both appellate courts make resort to "legislative acquiescence" particularly dubious.[8] In large part because our Court and the Court of

---

[7] Contrary to the assertion in Chief Justice Hunstein's dissent, the Court has never suggested that the General Assembly needs to "amend OCGA § 16-2-20 to provide for criminal liability in situations of this nature." Dissenting Op. at 663. Indeed, that dissent argues for the first time ever that OCGA § 16-2-20, as opposed to the causation element in OCGA § 16-5-1 (c), requires the result reached in *Crane*. See footnote 6 above.

[8] Even aside from these peculiar circumstances, it can be perilous to rely heavily on legislative silence and inaction to conclude that a court's interpretation of a statute is correct.
Legislative silence is a poor beacon to follow in discerning the proper statutory route.... The verdict of quiescent years cannot be invoked to baptize a statutory gloss that is otherwise impermissible. This Court has many times reconsidered statutory constructions that have been passively abided by [the legislature]. [Legislative] inaction frequently betokens unawareness, preoccupation, or paralysis. "It is at best treacherous to find in [legislative] silence alone the adoption of a controlling rule of law." *Girouard v. United States*, 328 U. S. 61, 69 [(66 SC 826, 90 LE 1084)] (1946).... Where, as in the case before us, there is no indication that a subsequent [General Assembly] has addressed itself to the particular problem, we are unpersuaded that silence is tantamount to acquiescence, let alone ... approval....
*Zuber v. Allen*, 396 U. S. 168, 185 & n. 21 (90 SC 314, 24 LE2d 345) (1969). See also *Helvering v. Hallock*, 309 U. S. 106, 119-120 (60 SC 444, 84 LE 604) (1940) ("To explain the cause of non-action by [the legislature] when [the legislature] itself sheds no light is to venture into speculative unrealities.").

Appeals have not consistently applied *Crane*, it has not had the sort of obviously far-reaching effects that are likely to stimulate a legislative response. Moreover, prosecutors will only rarely go to the trouble of charging felony murder where *Crane* appears to apply, much less appealing the issue when the trial court follows our precedent (as the trial courts must). Consequently, most of *Crane's* direct effect — the felony murder prosecutions that are never brought — goes unseen.

Furthermore, it is not clear how the General Assembly would go about correcting *Crane*. If the legislature revised the "he causes" language in OCGA § 16-5-1 (c) to say "he *proximately* causes," without simultaneously revising all the other homicide statutes that use similar causation language (including the malice murder provision in subsection (a) of the same statute), the effort could backfire. We could expect to see appeals by defendants arguing that the legislature's revision of one provision indicates that the language remaining in all the other provisions means something else — what we said such language meant in *Crane*, that is, "directly causes." Nor do legislatures commonly undertake to enact the highly detailed amendment that would be required to respond very specifically to *Crane* — assuming that, in light of the inconsistent application of *Crane*, the General Assembly could even tell for sure what it needed to correct.

In light of these considerations, we do not believe "that we can properly place on the shoulders of [the General Assembly] the burden of the Court's own error." *Girouard v. United States*, 328 U. S. 61, 69 (66 SC 826, 90 LE 1084) (1946). "Certainly, stare decisis should not be applied to the extent that an error in the law is perpetuated," *Etkind v. Suarez*, 271 Ga. 352, 357 (519 SE2d 210) (1999), and it would not foster the objectives of predictability, stability, and consistent development of legal principles to reaffirm a decision that branched away from the path of prior and subsequent causation law, has rarely been followed, and if truly followed would disrupt many areas of settled law.

### Conclusion

6. For these reasons, we hereby overrule *State v. Crane*, 247 Ga. 779, and our subsequent cases relying upon *Crane*. We hold that the felony murder statute requires only that the defendant's felonious conduct proximately cause the death of another person. We therefore reverse the order of the trial court and remand the case for the jury to decide the causation question at trial.

*Judgment reversed and case remanded. All the Justices concur, except Hunstein, C. J., and Benham and Thompson, JJ., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

The State charged appellees Jackson and Smith with the felony murder of Daniels, who was shot and killed in self-defense by Hogan after Daniels, together with appellees, attempted to rob Hogan at gunpoint. Relying on *State v. Crane*, 247 Ga. 779 (279 SE2d 695) (1981), the trial court dismissed the felony murder charges. In *Crane*, this Court held that a defendant is not criminally liable for felony murder in those cases where the murder victim was killed by someone other than the defendant or another party to the commission of the underlying felony. Focusing on certain language in the felony murder statute,[9] the majority overrules *Crane* and reverses the trial court. I cannot agree with the majority for the reason that the holding in *Crane* is compelled by the plain and unambiguous language in OCGA § 16-2-20, the statute that identifies those persons who may be charged with and convicted of the commission of a crime.

OCGA § 16-2-20 provides:

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
>
> (b) A person is concerned in the commission of a crime **only if** he:
>> (1) Directly commits the crime;
>> (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
>> (3) Intentionally aids or abets in the commission of the crime; or
>> (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

(Emphasis supplied.)

This Court recognized the effect of OCGA § 16-2-20 on the felony murder statute in *Hill v. State*, 250 Ga. 277 (1) (b) (295 SE2d 518) (1982).[10] Hill was convicted of the malice murder of police officer Mullinax and the felony murder of Darryl Toles, a bystander who was inadvertently shot by Mullinax when the officer fired back in response to Hill's attack. Citing *Crane*, this Court reversed the

---

[9] Under OCGA § 16-5-1 (c), "[a] person . . . commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice."

[10] The majority cites to *Hill* "albeit with no significant discussion." *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379 (695 SE2d 642) (2010). See Majority Opinion, p. 655.

felony murder conviction because the evidence was clear that Hill "did not directly cause the death of Darryl Toles and may not be convicted therefor." Id. at 280 (1) (b). In the accompanying footnote this Court pointed out that OCGA § 16-2-20 (former Code Ann. § 26-801)

> provides that under certain circumstances, one may be held responsible for a crime one did not directly commit. A review of that Code section shows none of the circumstances to be applicable here. The closest, perhaps, is [OCGA § 16-2-20] (b) (2) which allows a finding of criminal liability where one *"intentionally* causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity." (Emphasis supplied.) There is, however, in this case no allegation or evidence that [Hill] intentionally caused Officer Mullinax to shoot Darryl Toles.

Regardless whether or not appellees directly or proximately *caused* the death of Daniels, as *Crane* held, there is no question under the facts stipulated by the parties that appellees did not directly *commit* the alleged crime; hence, they cannot come within the ambit of OCGA § 16-2-20 (b) (1). A review of the indictment establishes that the State does not allege that appellees "intentionally cause[d]" Hogan, the intended armed robbery victim, to shoot and kill Daniels,[11] so that OCGA § 16-2-20 (b) (2) is not applicable. Finally, the facts and allegations present no basis for considering Hogan to be a "person concerned in the commission of" the alleged felony murder under any other provision in OCGA § 16-2-20.

By reinterpreting OCGA § 16-5-1 (c) to authorize defendants such as appellees to be charged with and convicted of felony murder when a defendant unintentionally but "proximately" causes some other person to commit the murder, the majority has judicially rewritten OCGA § 16-2-20 (b) to add a fifth category of criminal liability. Contrary to the majority's note, neither "[o]ur traditional proximate cause law" nor the questionable case law interpreting OCGA § 40-6-393 (a) authorizes the majority's cavalier expansion of OCGA § 16-2-20 (b). Maj. Op. p. 655, n. 6. I understand that many

---

[11] The pertinent language in the indictment charges appellees "with the offense of MURDER for that [appellees] . . . while in the commission of a felony, to wit: AGGRAVATED ASSAULT as alleged in Count 4 of this Indictment, did cause the death of Jerold Daniels, a human being." Count 4 alleged that appellees "did unlawfully make an assault upon the person of Arthur Hogan, with a firearm. . . ." The parties stipulated that Hogan was the person appellees intended to rob.

members of this Court are frustrated that the Legislature, despite our repeated exhortations, see, e.g., *Hyman v. State*, 272 Ga. 492, 493 (531 SE2d 708) (2000) (authored by Carley, J.), has declined to amend OCGA § 16-2-20 to provide for criminal liability in situations of this nature. As currently enacted *nothing* in OCGA § 16-2-20 makes a person criminally liable when that person unintentionally but proximately causes some other person to commit a crime. But creating this fifth theory of criminal liability all on our own is blatant judicial activism. The Legislature, not this Court, gets to decide whether a person in this type of situation is a party to a crime. I cannot agree to this judicial usurpation of the legislative prerogative. Instead, because OCGA § 16-2-20 (b) expressly provides that a person is concerned in the commission of a crime "only if" he comes within one of its four categories, thereby unambiguously setting forth *all* legally recognized theories of criminal liability in this State, and there is no allegation or evidence that appellees qualified under any of those four categories as parties to the crime of felony murder, I would hold that the trial court's dismissal of the felony murder charges against appellees was correct and should be affirmed. Accordingly, I respectfully dissent to the majority's opinion.

I am authorized to state that Justice Benham joins in this dissent.

THOMPSON, Justice, dissenting.

The Georgia felony murder statute provides that "[a] person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). In *State v. Crane*, 247 Ga. 779 (279 SE2d 695) (1981), this Court unanimously held that a "death of one of the would-be felons at the hand of the intended victim of the underlying felony" does not invoke the felony murder rule because the phrase "he causes" in the statute must be strictly construed to mean one of the defendants directly caused the death. *Crane*, supra at 779. The State concedes that *Crane* is factually on all fours and accurately states the law in Georgia, but it urges this Court to overrule it.

The meaning of "causes" was open to two possible interpretations in *Crane*, and we chose the one that favored the accused rather than the State. Id. As we have already said twice in the nearly 30 years since *Crane*, " '[i]f this result be viewed as a defect in our felony murder statute, the remedy lies with the legislature.' " *Hyman v. State*, 272 Ga. 492, 493 (531 SE2d 708) (2000) (quoting *Hill v. State*, 250 Ga. 277, 280 (295 SE2d 518) (1982)).

"[E]ven those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where[, as here,] the precedent relates to interpretation of a statute." [Cit.] A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function.

*Smith v. Baptiste*, 287 Ga. 23, 30 (694 SE2d 83) (2010) (Nahmias, J., concurring specially), quoting *Abernathy v. City of Albany*, 269 Ga. 88, 90 (495 SE2d 13) (1998). Without strong reason to set aside a long-standing interpretation, we will not do so in the face of legislative acquiescence. "If this Court has been wrong from the beginning, on this subject, let the legislative power be invoked to prescribe a new rule for the future; until altered by that power, we are disposed to adhere to the rule which has been so long applied by our Courts and is so well known to the legal profession." *Etkind v. Suarez*, 271 Ga. 352, 358 (5) (519 SE2d 210) (1999). Thus, unless and until the General Assembly declares that the element of causation in the felony murder statute actually means proximate causation, we should adhere to our interpretation of the statute as set forth in *Crane*.

"[N]o judicial system could do society's work if it eyed each issue afresh in every case that raised it. (Cit.) . . . The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it. (Cits.)" [Cit.]

*Etkind*, supra at 356-357 (5).

Certainly, stare decisis should not be applied to the extent that an error in the law is perpetuated. [Cit.] However, [*Crane*] is not an erroneous statement of the law of Georgia, but merely a pronouncement by a majority of this Court as to the proper construction of the [criminal] law of this state on a matter of first impression.

*Etkind*, supra at 357 (5). " 'Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions,

and contributes to the actual and perceived integrity of the judicial process.' " *Smith v. Baptiste*, supra at 31 (Nahmias, J., concurring specially).

The identical fact pattern that was considered in *Crane* is now again before the Court, and the statute has remained unaltered by the General Assembly despite the passage of 29 years. All that has changed is the composition of the Court. We cannot and should not take it upon ourselves to expand upon the statutory language to achieve a result not expressed and not intended by the legislature. To do so is to eliminate predictability, stability, and continuity that is essential to a well-ordered judicial system. For these reasons, I must respectfully dissent.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

DECIDED JUNE 28, 2010 —
RECONSIDERATION DENIED JULY 26, 2010.

*Patrick H. Head, District Attorney, Dana J. Norman, Jesse D. Evans, Assistant District Attorneys*, for appellant.
*Tony L. Axam, Calvin A. Edwards, Jr.*, for appellees.