307 Ga. 179
FINAL COPY

S19A0684. DADDARIO v. THE STATE.

BOGGS, Justice.

Appellant Lawrence Daddario challenges his conviction and sentence of life in prison for aggravated child molestation for having sexual intercourse with his 14-year-old daughter, which resulted in a very painful and potentially life-threatening childbirth approximately nine months later. Appellant does not dispute having sexual intercourse with his daughter but claims that he committed only child molestation, not aggravated child molestation, because aggravated child molestation requires an act that "physically injures" the child, OCGA § 16-6-4 (c), and pregnancy and childbirth usually are not considered to be physical injuries. He also claims that his aggravated child molestation conviction violates due process, because the statute is unconstitutionally vague regarding

whether an act of child molestation that causes a child under the age of 16 to endure childbirth can "physically injure[ ]" the child. Alternatively, he claims that he is entitled to a new trial on the aggravated child molestation charge due to the erroneous admission at trial of incriminating statements that he made to a volunteer court-appointed special advocate ("CASA") who spoke with him when he was in jail and represented by counsel in his criminal case without first advising him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

As explained below, in every prosecution for aggravated child molestation based on physical injury to the child, the State must present evidence sufficient to enable a rational jury to find beyond a reasonable doubt that the defendant committed an act of child molestation and that the act proximately caused physical injury to the child. Appellant asks this Court to hold that evidence related to a resulting pregnancy or childbirth is *never* legally sufficient under Georgia law to support a jury finding that an act of child molestation caused physical injury to the child, while the State asks us to hold

2

that evidence of a pregnancy or childbirth alone is *always* sufficient to support such a finding. We instead hold that whether an act of molestation proximately caused physical injury to the child victim is a question of fact to be decided by the jury based on the evidence presented at trial and is not dictated by per se rules like the ones sought by Appellant and the State, which do not appear in the text of the aggravated child molestation statute. And we hold that the evidence here — which showed that Appellant's act of child molestation proximately caused his daughter to endure a very painful and physically traumatic childbirth nine months later — is legally sufficient to support a jury finding of the physical injury element of aggravated child molestation.[1]

We also reject Appellant's claim that the aggravated child molestation statute violates due process because it is

---

[1] Appellant frames his arguments in terms of *either* childbirth *or* a pregnancy. Given the childbirth that Appellant proximately caused his underage daughter to endure through his act of child molestation, we need not decide here whether proof of pregnancy itself would be sufficient, standing alone, to support a jury finding of the physical injury element of aggravated child molestation.

unconstitutionally vague as applied to his conduct with his 14-year-old daughter, as well as his claim that the trial court erred in admitting at trial the incriminating statements that he made to the CASA volunteer. Accordingly, we affirm Appellant's conviction and sentence for aggravated child molestation.[2]

1.    (a)    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed as follows regarding Appellant's conviction for aggravated child molestation. Appellant's daughter, S. D., was born in April 2000, and she lived with Appellant and her two brothers, who were around her same age.

When S. D. was in the fifth grade, an elementary school teacher saw Appellant kiss S. D. on the lips in a manner that the teacher had never seen between a parent and child and that "[f]reaked out" and "[d]isgusted" the teacher. In September 2014, at the beginning of eighth grade, Appellant pulled S. D. out of school, ostensibly for

---

[2] Appellant also was convicted of two counts of second degree cruelty to children to his daughter and to her two brothers and sentenced to a total of 20 years consecutive for the two cruelty to children convictions. He does not challenge those convictions and sentences here, so we do not address them.

homeschooling. By then, S. D. could not remember how long her father had been having sexual intercourse with her, but she said it seemed like it had been "[e]very day" for her "whole life." Appellant did not wear a condom when he had sexual intercourse with S. D. He told her that it was right for them to have sex with each other, that no one would think that it was "weird," and that she should have sex with him because she was too "ugly" ever to have a boyfriend.

In early November 2014, Appellant impregnated S. D. He threatened to kill her if she told anyone that he was the father. S. D. wanted to get an abortion, but Appellant said no. In mid-January 2015, Appellant took S. D. to a faith-based pregnancy resource center that did not provide abortion services. A week later, a sonographer at the resource center performed an ultrasound on S. D. and determined that S. D. was around 12 weeks pregnant.

The resource center notified the sheriff's office, because S. D. was only 14 years old. The ensuing investigation uncovered evidence that Appellant neglected S. D. and her brothers, and in March 2015,

Appellant was arrested for second degree cruelty to children. The local Department of Family and Children Services took S. D. and her brothers into custody, and the juvenile court appointed a CASA volunteer for the children.

S. D. was put into foster care, and in mid-May 2015, she finally broke down and told her foster mother that Appellant was the baby's father. The CASA volunteer talked to S. D. several times about the disclosure, but it was very hard for S. D. to share anything about what had happened to her. In June 2015, the CASA visited Appellant at the jail to get more information from him about what happened to S. D. so that the CASA could better help S. D. During the course of the conversation, which the jail recorded, Appellant admitted to the CASA that he had sexual intercourse with S. D. more than once.

In early August 2015, S. D. started having contractions, and her foster mother took her to the hospital. After several hours, they were sent home, because S. D.'s contractions were starting and stopping too far apart for her to be admitted to the hospital. That

evening, S. D. awoke in the middle of the night and told her foster mother that the baby was coming. S. D. sat down in a recliner, and the baby suddenly emerged still enclosed in the amniotic sac. S. D.'s foster mother called 911, and an ambulance soon arrived to take S. D. and the baby to the hospital.

According to S. D.'s foster mother, the doctor later told her that the reason the baby emerged so quickly was because it was born inside an intact amniotic sac. S. D.'s foster mother explained: "If the sac doesn't break, they more or less just come out. The downside to that is, it tears you all apart." When asked if she saw any kind of injury to S. D., S. D.'s foster mother said, "You couldn't help but see it," because S. D.'s vaginal area was severely torn, and S.D. was bleeding profusely. S. D.'s foster mother described the scene as "traumatic," stating that she "had never seen so much blood," and she was told that if she had tried to drive S. D. to the hospital instead of calling an ambulance, S. D. "would have bled to death." S. D. was asked at trial if she had any tearing or needed any stitches after the baby was born, and she replied, "The lady at the hospital said it was

7

like plastic surgery." She also testified that she experienced a great deal of pain for weeks after the birth. S. D.'s foster mother confirmed that S. D. had to have numerous stitches, and that S. D. "had pain for about six weeks" after the birth, for which S. D. was given prescription pain medication.

DNA samples were taken from the baby at the hospital. DNA testing later confirmed that Appellant was the baby's father.

(b) On August 12, 2015, Appellant was indicted for aggravated child molestation, incest, statutory rape, and two counts of second degree cruelty to children. The aggravated child molestation count alleged that in early November 2014, Appellant

> did perform an immoral and indecent act with [S. D.], a child under the age of 16 years, in that said accused did have sex with [S. D.] with the intent to arouse and satisfy the sexual desires of said accused and said child, said act resulting in physical injury to said child in violation of O.C.G.A. § 16-6-4.

Appellant filed a combined motion to quash and special demurrer, asserting among other things that the aggravated child molestation count was defective due to a lack of specificity. The trial

8

court held a hearing, but before the court issued a ruling, the State obtained a superseding indictment. The superseding indictment contained identical charges, except that the aggravated child molestation count specified that the "sex" was "sexual intercourse," which resulted in "physical injury to said child by impregnating her causing said child to endure childbirth."

Appellant filed a second motion to quash and special demurrer. The trial court held a hearing, and Appellant argued "on statutory interpretation grounds . . . that the injury element of aggravated child molestation cannot be proven through pregnancy and childbirth." He also argued that the aggravated child molestation statute was unconstitutionally vague as applied to him, because a person of ordinary intelligence who read the aggravated child molestation statute "would not have thought at that time that childbirth or pregnancy would constitute an injury under the . . . statute." The trial court denied the motion to quash and special demurrer.

The State filed a motion in limine to admit Appellant's jailhouse statements to the CASA volunteer. The State acknowledged that the CASA interviewed Appellant without first advising him of his *Miranda* rights but argued that Appellant's statements to the CASA were admissible, because she went to the jail to speak with Appellant of her own volition and not at the direction of any State actor, and the statements were voluntarily made. The State analogized the situation to the scenario where a relative visits a defendant in jail and then contacts the State afterward to relay incriminating statements that the defendant made.

The trial court held an evidentiary hearing on the State's motion in limine, at which both the CASA volunteer and the lead investigator in Appellant's criminal case testified. The court then entered an order ruling that Appellant's statements were admissible. The court found that Appellant made the statements freely and voluntarily, and that the CASA volunteer was not a government employee or the functional equivalent of a law

10

enforcement officer. The court further found that the CASA volunteer went to the jail to speak with Appellant in her capacity as an advocate for the children, and that she was not acting as an interrogator for purposes of the criminal investigation. The court later entered a supplemental order finding that the CASA was genuinely concerned for the children's physical and emotional wellbeing, that she did not at any time portray herself as an officer of the law, and that she was not sent to the jail "to extract incriminating statements from [Appellant] at the behest of any law enforcement officer."

Appellant was tried from August 15 to 19, 2016. At the close of the evidence, the trial court instructed the jury on the statutory elements of child molestation and aggravated child molestation as well as the language of the aggravated child molestation charge in the indictment. The court told the jury that the State had the burden to prove "every material allegation of the criminal charges and every essential element of the crimes charged," and that the jury must decide whether the State proved that Appellant committed the

charged offenses in the manner specified in the indictment. The court also told the jury that for the offense of aggravated child molestation, the State "must prove beyond a reasonable doubt that the alleged child victim was physically injured by the act of child molestation," and that "[t]he element of injury required for aggravated child molestation can be proven through evidence that the child experienced pain during the crime, even without corroborating medical evidence." The court further instructed the jury that "[p]regnancy and childbirth may constitute the physical injury required as an element of aggravated child molestation *provided you, the jury, find it to be sufficient by evidence beyond a reasonable doubt to convince you that the alleged victim suffered physical injury caused by an act of child molestation.*" (Emphasis supplied.)[3]

The jury found Appellant guilty of all charges. The trial court sentenced Appellant to serve life in prison for aggravated child

---

[3] Appellant has not raised any claim of error regarding the jury instructions.

molestation and a total of 20 years consecutive for the two child cruelty convictions. The court merged the incest and statutory rape counts into the aggravated child molestation conviction.[4]

Appellant filed a timely motion for new trial, which he later amended. After a hearing, on November 29, 2018, the trial court entered an order denying the motion. Appellant filed a timely notice of appeal directed to this Court based on his challenge to the constitutionality of the aggravated child molestation statute. The case was orally argued on May 8, 2019.

2.    Appellant claims that his conviction for aggravated child molestation is invalid as a matter of law, because a pregnancy or childbirth — no matter how painful, and no matter how much damage it does to the child victim's body — is not a physical injury within the meaning of Georgia's aggravated child molestation statute. In a related argument, he claims that the aggravated child molestation statute is unconstitutionally vague regarding whether

---

[4] The State did not cross-appeal the trial court's merger ruling. We express no opinion on whether the trial court erred in that regard.

13

an act of child molestation that causes a child under the age of 16 to endure childbirth can "physically injure[ ]" her. OCGA § 16-6-4 (c). Both claims lack merit, as they erroneously conflate a statutory element of aggravated child molestation with specific mechanisms of injury.

(a) In Georgia, all crimes are defined by statute, see OCGA § 16-1-4, and every crime has as elements an actus reus and a mens rea, see OCGA § 16-2-1 (a) ("A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."). See also *In re Jefferson*, 283 Ga. 216, 218 (657 SE2d 830) (2008) ("'Like all crimes, [criminal] contempt has an act requirement (actus reus) and a mental component (mens rea).'" (citation omitted)). In addition, crimes are often defined to include as elements the presence or absence of certain "attendant circumstances." 1 Wayne R. LaFave, Substantive Criminal Law §§ 1.2 (c), 6.3 (b) (3d ed. Oct. 2018 update) (hereinafter "LaFave"). See *Bowman v. State*, 258 Ga. 829, 831 & n.4 (376 SE2d 187) (1989). For instance, "bigamy requires a previous marriage,

[and] statutory rape that the girl be under age." 1 LaFave § 1.2 (c). See OCGA §§ 16-6-3 (defining statutory rape), 16-6-20 (defining bigamy). Crimes are sometimes defined to require, as an additional element, that the conduct produce some "particular result." 1 LaFave § 1.2 (b). The most obvious example is murder, which requires that the conduct result in death. See id. § 1.2 (c); *Baker v. State*, 250 Ga. 671, 672 (300 SE2d 511) (1983) ("[I]t is an essential element of the crime of murder to show that a death occurred. . . ."). "The totality of these various items — conduct, mental fault, plus attendant circumstances and specified result when required by the definition of a crime — may be said to constitute the 'elements' of the crime." 1 LaFave § 1.2 (c).

OCGA § 16-6-4 defines the elements of both child molestation and aggravated child molestation. OCGA § 16-6-4 (a) (1) says in relevant part: "A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or

15

the person . . . ." And OCGA § 16-6-4 (c) says: "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."

Thus, for both crimes, OCGA § 16-6-4 (a) (1) identifies the actus reus as "any immoral or indecent act" and the mens rea as a specific "intent to arouse or satisfy the sexual desires of either the child or the person." See *Hill v. Williams*, 296 Ga. 753, 757 n.4 (770 SE2d 800) (2015) (discussing actus reus and mens rea elements of child molestation and aggravated child molestation); *McCord v. State*, 248 Ga. 765, 766 (285 SE2d 724) (1982) (same for child molestation). OCGA § 16-6-4 (a) (1) also specifies the presence of two attendant circumstances as required elements of both child molestation and aggravated child molestation: that the immoral or indecent act be done "to or in the presence of or with any child," and that the child be "under the age of 16 years." See *Hill*, 296 Ga. at 757 (describing these attendant circumstances as "essential elements" of both

crimes). Appellant does not dispute that his having sexual intercourse with his daughter amounts to child molestation.

Child molestation does not require as an element that any particular result flow from the immoral or indecent act. *Aggravated child molestation*, by contrast, requires as an additional element that the immoral or indecent act produce a particular result. See OCGA § 16-6-4 (c). Specifically, the act of molestation must "physically injure[ ] the child." Id. See also *Hill*, 296 Ga. at 757 n.4 (noting this element of aggravated child molestation). In other words, an act of child molestation becomes *aggravated* child molestation when it "physically injures the child." OCGA § 16-6-4 (c).[5]

Appellant argues here, as he did in the trial court, that as a matter of statutory interpretation, the physical injury element of aggravated child molestation cannot be established through proof

---

[5] It is possible to commit aggravated child molestation without physically injuring a child, but only if the molestation "involves an act of sodomy." OCGA § 16-6-4 (c). See OCGA § 16-6-2 (a) (1) (defining sodomy as performance of or submission to oral sex or anal sex). The indictment did not allege that Appellant's molestation of S. D. involved an act of sodomy.

17

regarding childbirth. But by its terms, OCGA § 16-6-4 (c) requires only an act of child molestation that "physically injures" the child; the statute does not specify all the possible mechanisms of injury. And the phrase "physically injures" is synonymous with the phrase "causes physical injury." See *Hall v. Wheeling*, 282 Ga. 86, 86 (646 SE2d 236) (2007) (equating phrase "physically injures" in aggravated child molestation statute with phrase "causing physical injury"). See also, e.g., *Holloway v. State*, 278 Ga. App. 709, 714 (629 SE2d 447) (2006) (same). Thus, the only question presented here is whether the State offered evidence at trial that Appellant's act of sexual intercourse with his 14-year-old daughter caused her to endure circumstances of childbirth so painful and traumatic to her body that a jury could conclude that she was physically injured. To answer that question, we look to the evidence the State offered to show that S. D. suffered pain and physical trauma, and we ask whether Appellant's criminal conduct caused it.

The commission of a crime requires the joint operation of the actus reus and the mens rea, see OCGA § 16-2-1 (a), as well as the

18

concurrence of any attendant circumstances that are defined as elements of the crime. See 1 LaFave § 6.3 (b). But the same is not true for elements that require a particular result. Where a crime is defined in terms of the outcome, there can be "a time lag between the conduct and the result." Id. The connection that criminal law requires between the conduct and the result is proximate cause.

> Georgia is a proximate cause state. When another meaning is not indicated by specific definition or context, the term "cause" is customarily interpreted in almost all legal contexts to mean "proximate cause" – "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred."

*State v. Jackson*, 287 Ga. 646, 648 (697 SE2d 757) (2010) (citation omitted). See also 1 LaFave § 1.2 (b) (describing as one of the "basic premises which underlie the whole of the Anglo-American substantive criminal law" the proposition that "as to those crimes which require not only some forbidden conduct but also some particular result of that conduct, the conduct must be the 'legal cause' (often called 'proximate cause') of the result"). Thus, it is not

necessary for a criminal statute to set out every possible way in which the prohibited conduct can cause the specified result.

Here, the indictment charged Appellant with aggravated child molestation by alleging that he had sexual intercourse with his underage daughter, which resulted in physical injury to his daughter related to the delivery of her child. The evidence the State offered at trial was sufficient to support a finding beyond a reasonable doubt of the physical injury element of the charge. Specifically, the State presented evidence that Appellant's act of sexual intercourse with his 14-year-old daughter proximately caused her physical injury by showing that S. D. suffered severe tearing of her vaginal area and life-threatening blood loss during childbirth, that S. D. required so many stitches afterward that it looked like "plastic surgery," and that S. D. suffered a great deal of pain not only during the delivery itself, but for the next six weeks, for which she was given prescription pain medication. See *Dixon v. State*, 278 Ga. 4, 8 (596 SE2d 147) (2004) (explaining that under OCGA § 16-6-4 (c), evidence of pain is sufficient to support a jury

finding that an act of child molestation physically injured the victim); *Massey v. State*, 346 Ga. App. 233, 235 (816 SE2d 100) (2018) (holding same).

Appellant's act of unprotected sexual intercourse with his 14-year-old daughter S. D., "in a natural and continuous sequence, unbroken by any efficient intervening cause, produce[d] injury" to S. D. in the form of a childbirth with severe tearing and potentially life-threatening blood loss, as well as pain during the delivery and for the next six weeks that was serious enough to warrant treatment with prescription pain medication, none of which would have occurred but for Appellant's immoral and indecent act of molestation. *Jackson*, 287 Ga. at 646 (citation and punctuation omitted). Accordingly, Appellant's claim that his conviction and sentence for aggravated child molestation are invalid as a matter of statutory interpretation fails. See id. at 654 ("Proximate causation imposes liability for the reasonably foreseeable results of criminal

(or, in the civil context, tortious) conduct if there is no sufficient, independent, and unforeseen intervening cause.").[6]

(b)    Appellant also claims that his conviction for aggravated child molestation violates due process, because OCGA § 16-6-4 (c) is unconstitutionally vague regarding whether an act of child molestation that causes a child under the age of 16 to endure childbirth can "physically injure[ ]" her. We disagree.

The constitutional guarantee of due process prohibits the government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 578 U. S.

---

[6] As noted at the outset, we do not hold that evidence of childbirth or a pregnancy alone is *always* sufficient to support a jury finding that an act of child molestation proximately caused physical injury to the child as required to sustain a conviction for aggravated child molestation. Cf. *Kendrick v. State*, 331 Ga. App. 682, 684-685 (769 SE2d 621) (2015) (arguably suggesting that evidence of full-term pregnancy is always sufficient, standing alone, to prove physical injury element of aggravated child molestation); id. at 685-686 (Dillard, J., concurring fully and specially) (stating view that "the physical changes and conditions experienced by a [young] woman as a result of a pregnancy caused by child molestation constitute a 'physical injury' within the meaning of OCGA § 16-6-4 (c)," and claiming that this view is "the majority's conclusion" as well).

\_\_\_, \_\_\_ (135 SCt 2551, 192 LE2d 569) (2015). See also *United States v. Davis*, 588 U. S. \_\_\_, \_\_\_ (139 SCt 2319, 204 LE2d 757) (2019) ("Vague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." (citation and punctuation omitted)). However, "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U. S. 544, 550 (95 SCt 710, 42 LE2d 706) (1975). See also *Maynard v. Cartwright*, 486 U. S. 356, 361 (108 SCt 1853, 100 LE2d 372) (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.").

As explained above, it is a basic premise of American criminal law that when a criminal statute defines a particular result as an element of a crime, the connection required between the prohibited conduct and the specified result is proximate cause. Thus, the

23

statute need not set out every step in the chain of causation between the conduct and the result.[7] Moreover, a person of common intelligence would understand that an act of child molestation that results in the pregnancy of a 14-year-old girl could, at the least, cause her to sustain physical injury in the event of a painful and traumatic childbirth such as the one discussed above in Division 2 (a), as contemplated by the physical injury requirement of the aggravated child molestation statute. Accordingly, Appellant's claim that his aggravated child molestation conviction violates due process

---

[7] A statute could of course set out required causal steps and define them as elements of the crime. But even the statutes from other states and one territory that Appellant points to do not *require* pregnancy as an element of an aggravated sex crime. Instead, those out-of-state statutes merely say that pregnancy, along with other specified outcomes, can support a conviction for an elevated version of the underlying crime or crimes. See, e.g., N.M. Stat. Ann. §§ 30-9-10 (D) (defining "personal injury" to mean "bodily injury to a lesser degree than great bodily harm" that "includes, but is not limited to, disfigurement, mental anguish, chronic or recurrent pain, pregnancy or disease or injury to a sexual or reproductive organ"), 30-9-13 (B) (2) (b) (defining "[c]riminal sexual contact of a minor in the second degree" to mean among other things "all criminal sexual contact of the unclothed intimate parts of a minor perpetrated . . . on a child thirteen to eighteen years of age when . . . the perpetrator uses force or coercion that results in personal injury to the child"); West's Wis. Stat. Ann. § 940.225 (1) (a) (defining nonconsensual sexual contact or intercourse as first degree sexual assault when it "causes pregnancy or great bodily harm").

24

because OCGA § 16-6-4 (c) is void for vagueness as applied to him also fails.

3.  Finally, Appellant claims that he is entitled to a new trial because the trial court erred in admitting incriminating statements that he made to the CASA volunteer who spoke with him while he was in jail and represented by counsel in his criminal case. Appellant complains that the CASA volunteer did not advise him of his *Miranda* rights before asking him questions, so his answers were inadmissible at trial. But as the trial court found, the CASA volunteer was not a government employee, and she did not go to the jail to question Appellant at the behest of any law enforcement officer. Thus, the CASA volunteer was not required to advise Appellant of his *Miranda* rights. See *Miranda*, 384 U. S. at 444 ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."). See also 2 Wayne R. LaFave et al., Criminal Procedure § 6.10 (c) (4th ed. Nov. 2018 update) ("[T]he courts have generally held that

government agents not primarily charged with enforcement of the criminal law are under no obligation to comply with *Miranda*. Thus, at least where the official has not been given police powers, *Miranda* has been held inapplicable to questioning by school officials, welfare investigators, medical personnel, judges, prison counselors, and parole or probation officers." (footnotes omitted)). The trial court therefore did not err in admitting Appellant's incriminating statements to the CASA volunteer. See *Williams v. State*, 302 Ga. 474, 484 (807 SE2d 350) (2017) ("*Miranda* does not govern questioning by private citizens who are not acting at the behest of law enforcement."). Accordingly, Appellant is not entitled to a new trial on this basis.

*Judgment affirmed. All the Justices concur, except Blackwell and Warren, JJ., who concur specially.*

BLACKWELL, Justice, concurring specially.

The Court today concludes that evidence of injury in connection with childbirth is sufficient to prove that a victim sustained a physical injury for purposes of OCGA § 16-6-4 (c), and because that conclusion reflects a fair understanding of the statute that the General Assembly has enacted, I concur in the judgment.[8] I write separately, however, to note a troubling consequence of our decision, one that the General Assembly likely never intended.

To the extent that any injury sustained in childbirth is a physical injury under the statute, *anyone* who causes a child under the age of consent to become pregnant and experience childbirth will be exposed to prosecution for aggravated child molestation, a crime that is among the most serious felonies and is punishable by

---

[8] The majority opinion focuses on the severity of the injuries that the victim in this case sustained, but no one should think that our holding can be limited to especially severe injuries. After all, OCGA § 16-6-4 (c) speaks in terms of an act that "physically injures" a child, not an act that "*severely* physically injures" a child. And injury and pain are quite common in childbirth. Consequently, I understand the Court to effectively hold today that any childbirth involving injury of any sort and pain to any extent — a childbirth that is hardly uncommon — is a proper aggravating circumstance for the purposes of OCGA § 16-6-4 (c).

imprisonment for no less than 25 years and up to life. See OCGA § 16-6-4 (d) (1). No one will lose much sleep over the prospect that someone like the appellant in this case — a sexually predatory father who repeatedly had sexual intercourse with his teenaged daughter — might spend the rest of his natural life in prison. But understanding the statute as we do today, a 16-year-old high school sophomore who has intercourse — without any force or other coercion — with his 15-year-old girlfriend and causes her to become pregnant and experience childbirth also would face the prospect of imprisonment for life.

With recent revisions of the statutes concerning sex crimes against children, the General Assembly has acknowledged that felony sentences are too harsh in many cases involving sexual activity between a willing teenager under the age of consent and another teenager. See, e.g., OCGA §§ 16-6-3 (c) ("If the victim is at least 14 but less than 16 years of age and the person convicted of statutory rape is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a

28

misdemeanor."); 16-6-4 (b) (2) ("If the victim is at least 14 but less than 16 years of age and the person convicted of child molestation is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a misdemeanor . . . ."); 16-6-4 (d) (2) ("A person convicted of the offense of aggravated child molestation when . . . [t]he victim is at least 13 but less than 16 years of age; [t]he person convicted . . . is 18 years of age or younger and is no more than four years older than the victim; and [t]he basis of the charge of aggravated child molestation involves an act of sodomy shall be guilty of a misdemeanor . . . ."). But the General Assembly has made no provision for more lenient treatment of teenagers in cases of aggravated child molestation predicated on physical injury.[9] Consequently, aggravated child molestation predicated on physical injury — which, this Court now has held, may be proved by evidence of an injury sustained in childbirth — is punishable only by

---

[9] Perhaps that is because the General Assembly never actually contemplated that "injuries" that are not inherently a result of an act of violence — exceedingly minor injuries, for instance, or injuries (minor or not) incurred in connection with childbirth — would be held to satisfy the physical injury requirement of OCGA § 16-6-4 (c).

29

"imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life." OCGA § 16-6-4 (d) (1).

Whether a teenager in a particular case actually would face such a harsh sentence depends in significant part, of course, on the discretion of the district attorney. In cases involving, for instance, a 16-year-old boy, a 15-year-old girl, sexual intercourse without force or coercion, and a resulting pregnancy and childbirth, I expect that most district attorneys would exercise their discretion to decline prosecution altogether or to pursue lesser charges than aggravated child molestation predicated on physical injury. But there is little reason for us to have confidence that every such case will come out that way.[10] See Humphrey v. Wilson, 282 Ga. 520 (652 SE2d 501)

---

[10] One does not have to doubt that most prosecuting attorneys exercise the powers of their offices in good faith to lack this confidence. A prosecuting attorney could misperceive, for instance, that an act of intercourse between two teenagers was forced or otherwise coerced, and as a result of that misperception, the prosecutor might charge a teenager with not only aggravated child molestation based on a childbirth that resulted from the intercourse, but also forcible rape. If a jury subsequently determined after hearing all the evidence that the intercourse was not, in fact, forced or coerced, the jury would be directed to acquit the teenager of the forcible rape. But an

(2007). If that is a concern for the General Assembly, perhaps it will

consider a further revision of OCGA § 16-6-4.

---

absence of force and coercion is no legal ground for an acquittal on a charge of aggravated child molestation, and it can be hard to undo a legal verdict after it has been returned. Prosecuting attorneys sometimes make mistakes, and even the most well-intentioned prosecutors may overcharge defendants from time to time.

WARREN, Justice, concurring specially.

Because I agree with the majority's conclusion, I concur in the judgment. Like Justice Blackwell, however, I write to highlight an issue related to OCGA § 16-6-4 (c), the aggravated child molestation statute.

The text of OCGA § 16-6-4 (c) does not expressly include or exclude pregnancy in the definition of an "act [that] physically injures." Nor does it delineate pregnancy as a separate predicate for aggravated child molestation, as it does for "an act of sodomy." Id. Today, the majority holds that evidence of child molestation that proximately causes "a very painful and physically traumatic childbirth nine months later . . . is legally sufficient to support a jury finding of the physical injury element of aggravated child molestation." Maj. op. at ___. But the majority does not answer — because it need not answer in this particular case — whether evidence of pregnancy alone can constitute "physical[ ] injur[y]," and can thus serve as a predicate for aggravated child molestation under OCGA § 16-6-4 (c).

32

Some state legislatures have definitively answered that question by making the policy judgment to enact statutes that specifically include "pregnancy" in a definition of "injury" or "bodily harm." See, e.g., N.M. Stat. Ann. § 30-9-10 (D) ("'[P]ersonal injury' means bodily injury to a lesser degree than great bodily harm and includes, but is not limited to, disfigurement, mental anguish, chronic or recurrent pain, *pregnancy* or disease or injury to a sexual or reproductive organ"); see also Del. Code Ann. tit. 11, § 9002 (10) ("'Personal injury' shall mean bodily harm; or mental, emotional or psychological harm, or shall include *pregnancy* resulting from the crime."); Minn. Stat. § 611A.52 (Subd. 9) ("'Injury' means actual bodily harm including *pregnancy* and emotional trauma."); Vt. Stat. Ann. tit. 13, § 5351 (4) ("As used in this chapter: 'Injury' means actual bodily harm *or pregnancy*, or emotional harm resulting from the crime.") (all emphasis supplied).

Other states expressly delineate pregnancy as a statutory aggravator for a crime—not because pregnancy is deemed an "injury," but because it serves as a separate and independent basis

for elevated punishment, just as physical injury and sodomy constitute separate and independent bases for elevated punishments under Georgia's aggravated child molestation statute. Compare, e.g., OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy.") with Wis. Stat. § 940.225 (1) (a) (first-degree sexual assault committed when a person "[h]as sexual contact or sexual intercourse with another person without consent of that person *and causes pregnancy or great bodily harm* to that person") (emphasis supplied). Cf. Wash. Rev. Code § 9.94A.535 (3) (i) (allowing for enhanced sentence if "[t]he offense *resulted in the pregnancy* of a child victim of rape") (emphasis supplied).

If Georgia's General Assembly would like to clarify definitively whether pregnancy is a predicate for aggravated child molestation —because it is (or is not) delineated as a separate statutory aggravator, because it is included in (or excluded from) "physical[ ] injur[y]" under OCGA § 16-6-4 (c), or because of some other type of

34

legislative revision best imagined by the legislative branch — then it should lift that determination out of the hands of prosecutors, juries, and judges and act as policymaker to amend the statute. Absent further guidance from the General Assembly, however, Georgia courts may be faced with a more complicated line-drawing exercise than this Court has had to engage in today.

DECIDED OCTOBER 31, 2019.

OCGA § 16-6-4 (c); constitutional question. Hall Superior Court. Before Judge Fuller.

*Matthew G. Leipold, Brett M. Willis, H. Bradford Morris, Jr.*, for appellant.

*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.